UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gina Rosado, | No. 2:22-cv-02302-KJM-CKD |
| Plaintiff, | ORDER |
| v. | |
| Leprino Foods Company, | |
| Defendant. | |

    Gina Rosado requested and received permission from her employer, Leprino Foods Co., to take a month's unpaid medical leave due to back pain. Her leave was extended a month more, then another, then several more, until more than a year had passed. Leprino had no information to suggest Rosado's condition had improved while she was out. It believed any further leave would not help her return to work, so it ended her employment, but it invited her to apply again when she could. Rosado alleges Leprino's actions constituted disability discrimination and retaliation, among other related claims. As explained in this order, however, the evidence leaves no dispute Leprino terminated her employment because her condition prevented her from performing her job, even with reasonable accommodations. Leprino's motion for summary judgment is **granted**.

## I. BACKGROUND

Rosado began working for Leprino in 2015. Joint Stmt. Facts ¶ 1, ECF No. 13-2. She went on a leave of absence several times between 2016 and 2020, often as a result of the injuries she suffered in two car crashes in 2017 and 2018, and she returned to work after each leave of absence. *Id.* ¶¶ 7–10; Rosado Dep. at 94–97, ECF No. 13-4. In 2020, however, she began a leave of absence that was repeatedly extended, and she did not ultimately return to work.

First, in July 2020, Leprino approved Rosado's request for medical leave based on her chiropractor's opinion that her back pain would prevent her from working until August 7. *See* Joint Stmt. Facts ¶ 11 & Ex. D. Two days before August 7, however, Rosado asked to extend her leave, forwarding her chiropractor's recommendation not to work again until September 5. *Id.* ¶ 12 & Ex. E. Leprino extended her leave. *Id.* ¶ 12. Again in September Rosado asked to extend her leave, forwarding a similar note recommending no work until October 5, and again Leprino approved the extension. *Id.* ¶ 13 & Ex. F. She did not return to work in October, and it was not until December when she asked to extend her leave again, this time for a longer period, through April 2021. *Id.* ¶ 14 & Exs. G–H. She was receiving treatment at the University of California, San Francisco Medical Center, where a nurse practitioner estimated Rosado would not be able to perform work "of any kind" until April 5, 2021. *See id.* Ex. G at LFC000242; *see also id.* Ex. H. Leprino approved her request to extend her leave through April 5, 2021. *Id.* ¶ 14. When April arrived, Rosado asked to extend her leave by three months. *Id.* ¶ 15 & Ex. I. She was continuing to receive treatment at the UCSF Medical Center, and her nurse practitioner anticipated she would require continued leave through July 2021. *Id.* Ex. I. Leprino approved this extension request as well. *Id.* ¶ 15.

But again in July, Rosado requested an extension, this time for six months, based on her nurse practitioner's anticipation that she "will be able to return to work full time" by December 2021. *Id.* ¶ 16 & Ex. J. At this point, Leprino had granted five extensions, and what had begun as a one-month period of leave had become a year away from the job. Rosado also had exhausted her right to medical leave under her union's collective bargaining agreement, as well as her leave
/////

1  under the federal Family Medical Leave Act and the California Family Rights Act. *See id.*
2  ¶¶ 3–5, 17.

3       Rosado had never requested or proposed any accommodation other than a leave of
4  absence. *Id.* ¶ 25. Leprino asked her to have her doctor complete a questionnaire so it could
5  decide if only that accommodation—an extended leave of absence—would be reasonable, or
6  whether there was another option. *See id.* ¶ 18 & Ex. K. In response, Rosado's nurse practitioner
7  explained Rosado was "unable to stand independently and uses a wheelchair" and had "severe
8  pain." *Id.* Ex. L at LFC000015. She was "unable to perform any of the functions of her work."
9  *Id.* at LFC000016. As for potential accommodations, the answer was unequivocal: "No
10  accommodations" were possible. *Id.* This would continue to be true for six more months. *Id.*
11  Ex. L at LFC000016–17.

12       Leprino received the completed questionnaire on July 23. *Id.* ¶ 19. Seven days later,
13  Leprino wrote to Rosado that it could not extend her leave. *Id.* Ex. M. "Based on our recent
14  discussion," it wrote, "it is not plausible that extending your leave of absence any further will
15  facilitate your return to work." *Id.* She would be terminated, but she could apply for an open
16  position if she recovered. *Id.* Rosado forwarded a revised questionnaire in which the same nurse
17  practitioner used more definitive language to explain when Rosado could return to work. *See id.*
18  Ex. N. The nurse practitioner had previously written, "We anticipate [Rosado] will be able to
19  return to work on 12/14/21." *Id.* Ex. M at LFC000016. She now wrote Rosado "will be able to
20  return to work on 12/14/21." *Id.* Ex. N at LFC000019. But Leprino did not reconsider its
21  decision. It finalized Rosado's termination on August 6, 2021. *Id.* Ex. O.

22       Several months later, in January 2022, Rosado sent Leprino a note from a doctor at the
23  UCSF Medical Center, who wrote that Rosado had been under her care and could now return to
24  work. *Id.* ¶ 24 & Ex. P. There is no evidence to indicate whether Rosado applied again or
25  whether Leprino considered rehiring her.

26       Rosado asserts seven claims in this action, all under state law:
27       • Disability discrimination in violation of the California Fair Employment and
28          Housing Act (FEHA), *see* Compl. ¶¶ 18–24, ECF No. 1-2;

- Retaliatory termination in violation of the FEHA, *see id.* ¶¶ 25–31;
- Failure to provide a reasonable accommodation in violation of the FEHA, *see id.* ¶¶ 32–39;
- Failure to engage in the interactive process required by the FEHA, *see id.* ¶¶ 40–47;
- Failure to prevent disability discrimination in violation of the FEHA, *see id.* ¶¶ 48–55;
- Wrongful termination in violation of public policy, *see id.* ¶¶ 56–61; and
- Termination in retaliation for taking leave guaranteed by the California Family Rights Act, *see id.* ¶¶ 62–68.

The parties have completed discovery, and Leprino seeks summary judgment. *See generally* Mot., ECF No. 13; Mem., ECF No. 13-1. The motion is fully briefed. *See generally* Opp'n, ECF No. 15; Reply, ECF No. 18. The court heard oral arguments on July 12, 2024. *See* Mins., ECF No. 21. Iman Alamdari appeared for Rosado, and Sandra Rappaport appeared for Leprino.

## II.   DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Leprino's motion boils down to a single question: would a further extension to Rosado's leave of absence have been a "reasonable accommodation" under the FEHA? Answering this question will show, first, whether Rosado could prevail in her discrimination claims. Employees

cannot show their employers wrongly discriminated against them in violation of the FEHA unless they ultimately prove at trial that they could have performed their essential job duties, with a reasonable accommodation if necessary. *See Green v. State of California*, 42 Cal. 4th 254, 262 (2007). Rosado could not have returned to work without any accommodation, and she has proposed no accommodation other than an extension to her ongoing leave of absence. So if Rosado is to succeed in proving disability discrimination, the further extension she requested must have been a reasonable accommodation. If a further extension was not a reasonable accommodation, then her FEHA discrimination claim would fall short, as would her claim for discrimination in violation of public policy. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 748 (9th Cir. 2011); *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999). And if there was no discrimination, there can be no failure to prevent discrimination under the FEHA. *See Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998).

Rosado's remaining claims hinge on the answer to the same question. If the only possible accommodation was an unreasonable one, then Rosado could not prevail in her claims that Leprino refused to offer a reasonable accommodation and failed to engage in the interactive process. *See Yates v. Health Servs. Advisory Grp., Inc.*, No. 16-04032, 2017 WL 3197228, at *8 (C.D. Cal. July 24, 2017); *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 376–77 (2015). Nor is an employer liable for retaliation if it terminated the employment for a legitimate reason, such as an employee's inability to perform essential job duties. *See Lucent*, 642 F.3d at 746; *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

A leave of absence can be a reasonable accommodation in some cases. California courts have held that "a finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999). But the FEHA does not demand employers "wait indefinitely for an employee's medical condition to be corrected." *Id.* at 226–27 (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)). Federal courts in California have reiterated and applied this rule many times. *See, e.g.*, *Neufeld v. Winco Holdings, Inc.*, No. 14-1505, 2016 WL 815649, at *4 (E.D. Cal. Mar. 2, 2016), *aff'd*,

699 F. App'x 659 (9th Cir. 2017) (unpublished); *Canupp v. Children's Receiving Home of Sacramento*, 181 F. Sup. 3d 767, 777 (E.D. Cal. 2016); *Norris v. Allied-Sysco Food Servs., Inc.*, 948 F. Supp. 1418, 1439 (N.D. Cal. 1996), *aff'd*, 191 F.3d 1043 (9th Cir. 1999). It stems from a fundamental premise underlying California's antidiscrimination laws:

> [D]rawing distinctions on the basis of physical or mental disability is not forbidden discrimination *in itself*. Rather, drawing these distinctions is prohibited *only if* the adverse employment action occurs because of a disability *and* the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation.

*Green*, 42 Cal. 4th at 262 (emphases in original).

Leprino cites *Shamir v. SCCA Store Holdings, Inc.*, a case from the Central District of California, in which these rules proved decisive. *See* Mem. at 10 (citing, No. 13-6672, 2014 WL 12597151 (C.D. Cal. June 9, 2014)). *Shamir* is similar and persuasively reasoned. An employee went on medical leave for what was originally expected to be a few days or weeks. *See* 2014 WL 12597151, at *2. Unfortunately, she did not recover so quickly, and as in this case, the leave of absence was extended many times, each time after a doctor's note with a new return-to-work date. *See id.* at *2–3. And as in this case, the extensions continued for about a year until the defendant ended the plaintiff's employment. *See id.* at *3. The district court granted the employer's summary judgment motion after finding, among other things, that the plaintiff employee could not perform her essential job duties despite reasonable accommodation. *See id.* at *4–6. The doctor's notes—which, as in this case, were each "succeeded by another note extending [her] leave"—transformed the purportedly finite leave of absence into an indefinite leave of absence. *See id.* at *5. There was no evidence to show the employer could have offered any accommodation other than "continually and indefinitely extending [the plaintiff's] leave of absence." *Id.* That is not a "reasonable accommodation." *Id.*

*Shamir* is not an outlier. Many other decisions rest on similar reasoning. *See, e.g.*, *Rimes v. Claire's Stores, Inc.*, No. 22-01488, 2023 WL 1787182, at *7 (C.D. Cal. Jan. 6, 2023), *aff'd*, No. 23-55113, 2024 WL 1461355 (9th Cir. Apr. 4, 2024) (unpublished); *Marinescu v. Weingarten Realty Invs.*, No. 19-02373, 2021 WL 3206080, at *6 (C.D. Cal. June 29, 2021);

6

*Tipton v. Airport Terminal Servs., Inc.*, No. 18-09503, 2020 WL 3980127, at *8 (C.D. Cal. Mar. 31, 2020); *Yates*, 2017 WL 3197228, at *7; *Canupp*, 181 F. Supp. 3d 767. The circumstances of these cases are often strikingly similar to this one. *See, e.g.*, *Rimes*, 2024 WL 1461355, at *1 (affirming summary judgment in favor of employer because the plaintiff "failed to present evidence that she was able to perform her job with reasonable accommodations" after taking "five extensions of her leave," offering "no indication that the requested fifth extension would be the last one or that she would be able to return to work at its completion"); *Canupp*, 181 F. Supp. 3d at 777–78 (granting summary judgment because "plaintiff's ability to even return to work [after nine months' additional leave] was still unknown when [the employer] made the decision to terminate her"). The extension Rosado requested in this case was not a reasonable accommodation in the circumstances.

Rosado argues a jury could conclude she was not actually requesting an unreasonable, indefinite leave of absence, but rather a reasonable and finite extension. *See* Opp'n at 8–9. She points out that her request was tied to a specific end date, she emphasizes the nurse practitioner's more definitive predictions about her recovery in December 2021, how she was eventually cleared to work without restrictions in January 2022, and she believes in retrospect that she could have returned to work even earlier. *See id.* at 9. It is true a series of extensions to an ongoing leave of absence "does not necessarily establish that it would continue indefinitely." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 988 (2008). But at the time Rosado made her request, she had requested and received many extensions based on similarly unconditional predictions that she could return to work, and Leprino had no reason to believe she had regained or would regain her ability to work by taking further leave. Leprino also consulted with Rosado's healthcare provider after the final extension request it considered. It received no information about her prognosis to show an extension would allow her to return; it received the same basic report it had received for the past year: she could not work in any capacity. As California appellate courts have held, even a finite period of leave is not a reasonable accommodation if it is not "likely that following the leave the employee would be able to perform his or her duties." *Hanson*, 74 Cal. App. 4th at 226.

7

      Nor can Rosado rely on the benefit of hindsight to prove her July extension request would be the last one. The requested extension must be reasonable "'in light of all facts known' at the time." *Furlow v. TWC Admin., LLC*, No. 18-01734, 2019 WL 9834332, at *10 (C.D. Cal. Aug. 23, 2019) (quoting *Perona v. Time Warner Cable*, No. 14-02501, 2016 WL 8933625, at *6 (C.D. Cal. Mar. 24, 2016)). A plaintiff's eventual recovery does not prove her request for additional leave was reasonable if, based on what the employer knew at the time, it was unclear the plaintiff would ever return to work. *See Canupp*, 181 F. Supp. 3d at 778. At the time of Rosado's July 2021 request, she had made many similar or even identical requests for additional leave. Nothing suggested her most recent request was different than those that had come before: no notes about improvements in her prognosis, no plan for a new and promising treatment, no clarification she was beginning the final stage of a necessarily lengthy treatment.

      In short, at the time Rosado made her last request, no evidence showed an additional extension could permit her to recover and return to work, and no evidence showed this extension request would in fact be the last. These circumstances separate this case from those Rosado cites in opposition to Leprino's motion. *See Nadaf-Rahrov*, 166 Cal. App. 4th at 988–89 (holding a jury could find it was unreasonable for an employer to terminate the employee unilaterally without notice and without consulting with the employee's doctor about accommodations); *Clark v. Hoag Mem'l Hosp. Presbyterian*, No. G051949, 2017 WL 1180423, at *3, *6 (Cal. Ct. App. Mar. 30, 2017) (unpublished[1]) (holding a request for a single proposed extension was not a request for indefinite leave and potentially a reasonable accommodation).

      Finally, Rosado has cited no evidence that could permit a jury to find Leprino was retaliating against her because she had requested leave or was taking leave. Leprino granted all of Rosado's requests for leave except the last. It is undisputed Rosado could not perform her essential job duties when Leprino terminated her employment. And after a year of leave, nothing

---

[1] Although the California Rules of Court would prohibit the citation of this unpublished decision in a state court, those rules do not apply in federal courts, which may review and consider unpublished appellate decisions for their persuasive (but not precedential) value. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997); *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 405–06 (C.D. Cal. 2016).

suggested a further six-month extension would help Rosado regain her ability to work. Leprino also invited Rosado to apply again when she could. The only conclusion to draw from this record is that Leprino terminated Rosado's employment because she could not perform her job duties and because no accommodation—other than an indefinite leave of absence—was available. Because an indefinite leave of absence is not a reasonable accommodation, Leprino's motion must be granted.

### III.  CONCLUSION

The motion for summary judgment (ECF No. 13) is **granted**, and the case is **closed**.

IT IS SO ORDERED.

DATED:  April 4, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE